UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ROBERT JOHN MCNAUGHT, *pro se*,

        Petitioner,

        -against-

DUKE TERRELL,

        Respondent.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-2186 (DLI)(LB)

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* Petitioner Robert John McNaught, currently incarcerated at the Metropolitan Detention Center ("MDC"), a federal facility in Brooklyn, New York, brings this habeas corpus petition, pursuant to 28 U.S.C. § 2241, seeking to have thirteen (13) days good conduct time restored, which would result in a release date of June 4, 2011, rather than June 15, 2011. (*See* Declaration of Daniel Garcia, "Exh. A".[1]) Petitioner argues that by imposing the loss of good conduct time as a Federal Bureau of Prisons ("BOP") sanction for his alleged insolence, the Respondent unlawfully extended his term in federal custody without providing due process during the disciplinary process. Petitioner invokes the jurisdiction of this court "notwithstanding a pending administrative appeal before the BOP" due to "exigent circumstances," arguing that his original sentence will terminate on June 4, 2011, and the BOP's administrative appeal process "takes several months for resolution."[2] (Pet. Mem. Supp. at 1.)

---

[1] References to exhibits refer to those exhibits annexed to the Declaration of Daniel Garcia, Discipline Hearing Officer ("DHO") (Docket Entry No. 9), unless otherwise indicated.

[2] Petitioner also requests an injunction to prevent his return to Beaumont, Texas, until adjudication of this Petition or until June 4, 2011, to "ensure that this Petition is heard in a timely manner." (Pet. Mem. Supp. at 2.) Because Petitioner's habeas petition is denied on the merits, the court need not address this issue as it is moot.

Respondent submits that contrary to Petitioner's allegations, he received all of the due process to which he was entitled at the disciplinary hearing, and that therefore, the Petition should be dismissed with prejudice.

For the reasons set forth below, Petitioner's request for relief is denied.

I. **Background**

On October 27, 2006, Petitioner was found to have violated supervised release for an earlier conviction and was sentenced to thirty months in federal prison, which he began serving on July 31, 2009. (Exh. A.) On December 6, 2010, he was transferred to Toler House, a Community Corrections Center ("CCC"), located in Newark, New Jersey. (Exh. B.) Prior to the transfer, Petitioner signed a "Community-Based Program Agreement," by which he agreed to "abide by the rules and regulations promulgated by" the CCC to which he would be designated. (Exh. D.) On December 8, 2010, Petitioner signed an acknowledgment indicating he had received the Toler House Resident Handbook (the "Handbook") and agreed to participate in the program and abide by its rules. (Exh. E.) The Handbook provides that "[d]isrespect or insolence towards anyone or the program will not be tolerated and will be documented in an incident report; being insolent toward another individual can result in termination from the program." (Exh. F.) On March 1, 2011, Toler House employment specialist Ms. Murray wrote up an Incident Report charging Petitioner with insolence. (Exhibit H.) The same day, Toler House staff requested Petitioner be remanded to the MDC. (Exhibit I.)

On March 2, 2011, the Incident Report was delivered to Petitioner and he was transferred to the MDC. (*See* Exhibit B.) Andre Sobers, the Supervisor of Operations at Toler House, was assigned as the CCC investigator. (Decl. of Andre Sobers ¶6.) On March 17, 2011, Sobers conducted an interview of the Petitioner. (Exhibit J.) Based upon the Petitioner's statement and

the contents of the incident report, Sobers determined that the Petitioner had been insolent, and due to "the nature and severity of the infraction," Sobers recommended a Community Discipline Committee ("CDC") hearing. (*Id.*) At the end of the March 17, 2011 interview with Petitioner, Sobers informed Petitioner that he was recommending a CDC hearing, and gave Petitioner a form entitled "Inmate Rights at CDC Hearing." (Exh. L.) On March 18, 2011, immediately prior to the CDC hearing, Petitioner received a "Notice of CDC Hearing," which he initialed in two places, indicating the waiver of his right to a staff representative and that he understood that he had the right to call witnesses at the hearing. (*See* Exh. M.)

On March 18, 2011, the CDC hearing was conducted by William Mosley, the CDC chairperson. (Exh. K.) The CDC considered the following evidence: (a) the Incident Report and Investigation, (b) the Community Based Program Agreement, (c) the Toler House Resident Handbook Acknowledgement Form, and (d) a language excerpt from the Toler House Resident Handbook pertaining to insolence. (Exh. D-F.) The CDC determined that Petitioner had committed the act of insolence, and recommended a sanction of return to custody.[3] (Exh. K at § VI.) Petitioner was informed of the CDC's findings and recommendation, advised of his right to appeal and given a copy of the CDC report. (Garcia Decl. ¶25, Exh. K at p. 2.) The CDC report and supporting documents ("CDC packet") were then forwarded for review to the Community Corrections Manager ("CCM"), Peter Brustman, and finally to the DHO, Daniel Garcia, for certification and sanctioning. (Garcia Decl. ¶26.)

The DHO reviewed the packet and determined that the Petitioner should receive "(a) disallowance of 13 days of good conduct time; and (b) transfer to a more secure facility." (Garcia Decl. ¶27.) The DHO certified that: (1) all phases of the disciplinary hearing had been

---

[3] As noted earlier, Petitioner had already been transferred to the MDC.

completed; (2) the findings were based on fact; and (3) the proper procedures had been followed. (Garcia Decl. ¶28.) On April 1, 2011, the DHO completed the "Checklist for CDC Certification," and signed and dated the CDC report. (Garcia Decl. ¶28, *see* Exh. N, J.)

A letter dated April 11, 2011 advised Petitioner that he was sanctioned by the DHO as noted on the CDC report attached thereto, and that he could appeal the decision to the Regional Office within 20 days from the date on which he received a copy of the report. (*See* Docket Entry No. 1, p. 14.) In a letter dated April 21, 2011, Petitioner submitted his appeal, requesting the earliest possible review and response.[4] (*See* Docket Entry No. 1, p. 6.)

On May 2, 2011, Petitioner filed the instant petition for a writ of habeas corpus, alleging that he had been denied due process in connection with the investigation and hearing concerning the insolence charge. (*See* Petition, p. 5, Docket Entry No. 1.) The Petitioner claims he was denied advance written notice of the charge, a reasonable opportunity to call witnesses and present evidence at the hearing, an impartial hearing officer, and a written statement of the disposition, including findings of facts and reasons for the disciplinary action supported by evidence.

The Respondent submits that the Petition should be dismissed because the Petitioner was provided the requirements of due process set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 563 (1974).

---

[4] Based on the information provided to the court, it appears that Petitioner's administrative appeal is pending. Respondent did not address the impact that the pending appeal may or may not have on the propriety of the court addressing the habeas petition. In light of the time sensitive nature of the relief sought, the court has opted to consider the habeas petition on its merits, without addressing the effect of the pending administrative appeal.

## II. Discussion

A writ of habeas corpus under 28 U.S.C. § 2241 is available to a federal prisoner who challenges the execution of his sentence subsequent to conviction. *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

"It is well established the loss of good time credit as punishment for prison disciplinary offenses implicates a liberty interest protected by the Fourteenth Amendment." *Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (citing *Wolff*, 418 U.S. at 558). However,

> [a] disciplinary hearing that results in a revocation of a prisoner's good time credit satisfies the due process requirements of the Fourteenth Amendment if: (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals; (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

*Id.* (citations omitted); *see also* 28 C.F.R. § 541.17 (setting forth procedures before DHO.)

The Second Circuit has held that "revocation of good time credits does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (citing *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). *See, e.g. Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir. 1992) (hearing officer violated inmate's due process rights by finding him guilty of misconduct where hearing record failed to meet the "some evidence" standard established in *Hill*).

As a *pro se* litigant, Petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will construe his pleading and papers "to raise the strongest arguments that they suggest."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). Even under the most liberal interpretation of the arguments raised by Petitioner in his Petition, the court finds that Petitioner has failed to allege any facts entitling him to relief. Petitioner properly received notice of the hearing, and acknowledged receipt of said notice in writing. Although Petitioner claims he did not receive "advance notice of [the] charges," (Petition p. 2), he admits that, on March 2, 2011, he received "an Incident Report for insolence." (Petition, p. 8.) Petitioner also concedes he received a hearing before the CDC. (Petition, pp. 11-18.)

Specifically, Petitioner argues that "neither an investigation nor hearing was conducted within the prescribed 72-hour period required by BOP policy." (*See* Petition, p. 9.) The court construes this claim as a reference to 28 C.F.R. § 541.15(b), which provides that each inmate charged with an infraction is entitled to an initial hearing before the Unit Discipline Committee ("UDC"), "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." The BOP policy does not require that a hearing be conducted within three days, but rather describes the process by which proceedings should 'ordinarily' take place pursuant to 28 C.F.R. §541.15(b). *See Scott v. Craig*, 2008 WL 4866051 (N.D.N.Y. 2008) (delay of one year between date of incident reports and disciplinary hearings did not violate inmate's due process rights.) The two-week delay between the date the incident report was prepared and the date of the CDC hearing does not violate due process. *See Rahman v. Wingate*, 740 F. Supp. 2d 430 (S.D.N.Y. 2010) (holding that there was no due process violation where the inmate was not given an incident report within 24 hours of the incident and the sanction determination was not rendered within three weekdays).

Petitioner further claims he was denied the opportunity to call witnesses at the CDC hearing. However, Petitioner acknowledged receipt of two notices informing him of his rights.

6

(Garcia Dec.¶¶ 22, 24 & Exs. L-M; Sobers Decl. ¶13, 22.) After being told he would not be permitted to call Mr. Brustman, the CCM, as a witness because of a conflict of interest, Petitioner opted to continue with the CDC hearing. (Sobers Decl. ¶¶16, 20-22; *see* Petition, pp. 11-12.) Moreover, Petitioner concedes that he agreed to go forward without any witnesses, contending that he did so as a result of Mr. Sobers' promise to "recommend only a sanction of 'return to custody' be applied." (Petition, p. 11.)

It is undisputed that the CDC did recommend a sanction of return to custody. (Exh. K.) However, the DHO's decision to impose a greater sanction and revoke thirteen days good conduct time is entirely appropriate. *See* 28 C.F.R. §§ 541.16-541.18. *See Pena v. Drew*, 324 Fed. Appx. 143, 144 (2d Cir. 2009) ("The regulations governing the DHO's authority do not mention, much less require, that the DHO take account of the UDC's recommendation in his ultimate decision of accountability.") The CDC report, certified and annotated by DHO Garcia,[5] contains a summary of the evidence, the CDC's finding, a list of the evidence relied upon, the recommended sanction, and the sanction ultimately imposed, thus meeting the standards articulated in *Wolff* and its progeny. *See also Maydak v. Warden, FCI Raybrook*, 1 Fed. Appx. 55 (2d Cir. 2001) (DHO was required to provide inmate with written statement explaining denial of rehearing.)

Finally, Petitioner claims that Mr. Sobers, the CCC investigator, and Mr. Mosley, the CDC chairperson, were biased, because they "were aware of [his] grievances against [the complainant]" and "should have, therefore recused themselves from the investigation entirely." (Docket Entry No. 3, p. 4.) The court has liberally construed *pro se* Petitioner's allegations as it

---

[5] Petitioner argues that he did not receive "a written statement of disposition," which claim is contradicted by the CDC report submitted as part of his petition. (Petition, pp. 16-18.)

must.  Notwithstanding such a liberal reading, Petitioner has failed to allege sufficient facts upon which relief can be granted.

While the CDC hearing was not held within three work days, as provided by 28 C.F.R. § 541.11, as discussed above, this, standing alone, does not rise to the level of a constitutional deprivation.  *See Tellier v. Scott*, 2004 WL 224499 (S.D.N.Y. 2004), appeal dismissed, 130 Fed. Appx. 504 (2d Cir. 2005);  *see also Homen*, 229 F. Supp. 2d at 296 (noting that no regulation requires "serv[ing] a prisoner with an incident report within a specific number of days following the alleged incident.")

### III. Conclusion

For the reasons set forth above, Petitioner's request for relief is denied.  A certificate of appealability shall not issue as petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2);  Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

SO ORDERED.

Dated:  Brooklyn, New York
       June 2, 2011

      _____/s/_____
      DORA L. IRIZARRY
      United States District Judge